150 F.3d 1072
 41 Fed.R.Serv.3d 588, 28 Envtl. L. Rep. 21,463,
98 Cal. Daily Op. Serv. 5535,
98 Cal. Daily Op. Serv. 8054,
98 Daily Journal D.A.R. 7735
 CHURCHILL COUNTY, a political subdivision of the State of
Nevada; City of Fallon, a political subdivision
of the State of Nevada, Plaintiffs-Appellants,
v.
Bruce BABBITT, in his official capacity as Secretary of the
Interior; William Bettenberg, in his official capacity as
Assistant Director, Office of Policy Analysis, Department of
Interior; Jefferey Zippin, in his official capacity as Team
Leader, Truckee-Carson Coordination Office, Department of
Interior; Ronald Anglin, in his official capacity as Refuge
Manager; Stillwater National Wildlife Refuge, Department of
Interior; Marvin Plenert, in his official capacity as
Regional Director of the United States Fish and Wildlife
Services; John Doebel, in his official capacity as
Assistant Regional Director of the United States Fish and
Wildlife Services; Ann Ball, in her official capacity as
Project Manager of Bureau of Reclamation Lahontan Basin
Project Office, Defendants-Appellees,
and
Sierra Pacific Power Company, Intervenor.
CHURCHILL COUNTY, a political subdivision of the State of
Nevada; City of Fallon, a political subdivision
of the State of Nevada, Plaintiffs-Appellees,
Sierra Pacific Power Company, Intervenor-Appellant,
v.
Bruce BABBITT, in his official capacity as Secretary of the
Interior, Defendant.
 Nos. 97-15508, 97-15813.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1997.
Decided July 15, 1998.
 
 Antonio Rossmann, Michael F. Mackedon, San Francisco, California, for the plaintiffs/appellants/cross-appellees.
 William E. Peterson and Suellen Fulstone, Woodburn & Wedge, Reno, Nevada, for the intervenor-appellant.
 Fred R. Disheroon, Assistant United States Attorney, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the District of Nevada; Edward C. Reed, Jr., District Judge, Presiding. D.C. Nos. CV-95-00724-ECR, CV-96-00146-ECR.
 Before: WIGGINS, KLEINFELD, Circuit Judges, and DWYER, District Judge.*
 WIGGINS, Circuit Judge:
 
 
 1
 The battle over water in the West continues in this suit by local Nevada governments challenging the Department of the Interior's implementation of a water rights acquisition program prior to producing a programmatic environmental impact statement on the interaction of the program with other related programs. The first issue in this consolidated appeal is whether the local governments have standing to bring this suit against the Secretary of the Department of the Interior and other defendants. We find that they do, and reverse the district court on that issue. The second issue is whether a local power utility has the right to intervene in the merits phase of the governments' action. We find that it does not, and affirm the district court on that issue.
 
 I. Background
 
 2
 The Newlands Reclamation Project, an early federal reclamation project, has supplied water to irrigate a vast area of western Nevada for most of this century, creating a thriving agricultural community. It has also had unforeseen adverse environmental side-effects in its two divisions, the Truckee Division and the Carson Division. In particular, the Newlands Project diverted water away from wetlands in the Lahontan Valley in the Carson Division. Protracted disputes over a number of complex water issues in the Truckee and Carson river basins, including the environmental threat to these wetlands, resulted in Congress passing the Fallon Paiute Shoshone Indian Tribes Water Rights Settlement Act ("Settlement Act") in 1990. See Fallon Paiute Shoshone Indian Tribes Water Rights Settlement Act of 1990, Pub.L. No. 101-618, 104 Stat. 3289 (1990).
 
 
 3
 Section 206 of the Settlement Act establishes a water rights acquisition plan (the "Plan") to increase the wetlands and subsequently to sustain indefinitely approximately twenty-five thousand acres of wetlands in the Lahontan Valley. See Settlement Act, § 206 (entitled "Wetlands Protection"). Under the Plan, the United States Fish and Wildlife Service ("FWS") is authorized to purchase land (or simply water rights) in order to transfer the water rights to the Lahontan Valley wetlands (specifically, to wetlands in the Stillwater National Wildlife Refuge, Carson Lake and Pasture, and Fallon Paiute-Shoshone Indian Reservation Wetlands). The FWS is authorized to target purchases in areas most beneficial to the Plan. All purchases are to be from voluntary sellers.
 
 
 4
 In November 1996, the FWS issued its Record of Decision on the Plan. Per its pronouncements, the FWS is to purchase fifty-five thousand acre feet of water from within the Carson Division of the Newlands Reclamation Project, starting as of December 1996 (around twenty thousand acre feet in the Carson Division had already been acquired by the FWS at that time). The FWS is to seek an additional thirty-three thousand acre feet through leasing programs and other methods. Significant to this appeal, the Carson Division is located within Churchill County near the City of Fallon.
 
 
 5
 The National Environmental Policy Act ("NEPA") mandates the preparation of an environmental impact statement ("EIS") on any major Federal action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). When there is a regional plan or when multiple federal programs will have a "cumulative or synergistic environmental impact upon a region," the relevant agency must prepare a programmatic environmental impact statement ("PEIS") on the regional plan or on the programs' combined impact. See Kleppe v. Sierra Club, 427 U.S. 390, 400-02 & 410, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976) (citing § 4332(2)(C)). The Department of the Interior ("Interior") prepared a final environmental impact statement (the "FEIS") on the Plan, but refused to prepare a PEIS on the combined effect of the Plan with the other programs established by the Settlement Act affecting water in the area.
 
 
 6
 Appellants Churchill County ("County") and City of Fallon ("City") sued the Secretary of the Interior and others under the Administrative Procedure Act ("APA"). See 5 U.S.C. § 702. They alleged that Defendants violated NEPA by failing to prepare a PEIS prior to implementing the Plan. The district court held that County and City lacked standing to bring the suit. The court held that they had failed to show the imminence of injury to them from the Plan. The court therefore granted summary judgment to Defendants. County and City appeal.
 
 
 7
 A local power utility, Sierra Pacific Power Company ("Sierra Pacific"), sought to intervene as of right as a defendant in County and City's action. The district court held that Sierra Pacific could intervene, but only in the remedial phase of the trial. The court excluded it from the merits phase by holding that only the federal government can be the defendant in a NEPA action. Sierra Pacific appeals that decision limiting its intervention.
 
 II. Standards of Review
 
 8
 A plaintiff's standing to sue is a question of law reviewed de novo. See Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir.1997); Douglas County v. Babbitt, 48 F.3d 1495, 1499 (9th Cir.1995), cert. denied, 516 U.S. 1042, 116 S.Ct. 698, 133 L.Ed.2d 655 (1996). On a summary judgment motion, the plaintiff bears the burden of showing specific facts as to each element of standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
 
 
 9
 A district court's ruling on a motion to intervene as of right under Federal Rule of Civil Procedure 24(a) is reviewed de novo. See Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1493 (9th Cir.1995).
 
 III. Plaintiffs' Standing
 A. The Standard for Standing
 
 10
 The question of standing involves a case's justiciability under Article III of the Constitution: Whether a particular plaintiff has the right to bring a particular claim in federal court. The Supreme Court articulated the basic test for a plaintiff's standing in Lujan v. Defenders of Wildlife:
 
 
 11
 First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
 
 
 12
 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). This three-part test represents the "irreducible constitutional minimum" for standing. Id. at 560, 112 S.Ct. 2130. The requisite weight of proof for each element of the test is lowered, however, for "procedural standing," which is the kind of standing claimed by Plaintiffs in this case. See id. at 572 n. 7, 112 S.Ct. 2130.
 
 
 13
 Procedural standing is standing based on a plaintiff's procedural injury. A plaintiff may claim "procedural standing" when, for example, it seeks "to enforce a procedural requirement the disregard of which could impair a concrete interest of [the plaintiff's]." Id. at 572, 112 S.Ct. 2130 (giving as an example "the procedural requirement for an environmental impact statement before a federal facility is constructed next door to [plaintiffs]"). The Supreme Court recognized the lower standards of proof for such procedural standing in a footnote:
 
 
 14
 There is this much truth to the assertion that "procedural rights" are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.
 
 
 15
 Id. at 572 n. 7, 112 S.Ct. 2130.
 
 
 16
 We stated our test for procedural standing in Douglas County v. Babbitt, 48 F.3d 1495 (9th Cir.1995), cert. denied, 516 U.S. 1042, 116 S.Ct. 698, 133 L.Ed.2d 655 (1996). To establish procedural standing, the plaintiff must show: (1) that it has been accorded a procedural right to protect its concrete interests, and (2) that it has a threatened concrete interest that is the ultimate basis of its standing. See id. at 1500-01 (citing Defenders of Wildlife, 504 U.S. at 572 n. 7 & 573 n. 8, 112 S.Ct. 2130). We require that the plaintiff establish the "reasonable probability" of the challenged action's threat to its concrete interest. Id. at 1501 n. 6.
 
 
 17
 In addition, a plaintiff who brings a statutory enforcement action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, must meet its statutory requirements for standing. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 882-83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The plaintiff must establish (1) that there has been final agency action adversely affecting the plaintiff, and (2) that, as a result, it suffers legal wrong or that its injury falls within the "zone of interests" of the statutory provision the plaintiff claims was violated. Id. (citing 5 U.S.C. § 702); see also Douglas County, 48 F.3d at 1499-1501; Friends of the Earth v. United States Navy, 841 F.2d 927, 932 (9th Cir.1988).
 
 B. The County's and City's Standing
 1. Plaintiffs' Procedural Right
 
 18
 In order to show its standing to bring a suit, a plaintiff must first establish that it has been accorded a procedural right to protect its threatened concrete interests. See Douglas County, 48 F.3d at 1500. County and City have shown that NEPA grants each of them the procedural right to protect their concrete interests in this case.
 
 
 19
 Section 4332(2)(C) of NEPA, which mandates an EIS on major federal actions which significantly affect the environment, grants "local agencies, which are authorized to develop and enforce environmental standards," the right to comment on the EIS. 42 U.S.C. § 4332(2)(C). County and City qualify as such local agencies through Nevada statutes which authorize them to prepare and adopt land management plans with environmental standards. See Nev.Rev.Stat. §§ 278.010-278.630. NEPA thus granted County and City, as local agencies empowered to adopt environmental land management plans, a procedural right to protect its land interests.
 
 
 20
 The procedural right claimed by City and County is identical to that claimed by Douglas County and recognized by this court in Douglas County, 48 F.3d at 1501. Douglas County based its procedural standing on the same right represented by § 4332(2)(C) of NEPA, and was authorized under an Oregon statute almost identical to the pertinent Nevada statute to prepare and adopt land management plans with environmental standards. See id. We held that NEPA had accorded Douglas County the procedural right to protect its interest in land management such that it could satisfy the first element of procedural standing. See id.
 
 
 21
 Accordingly, we hold that NEPA has granted County and City the procedural right required to meet the first element of procedural standing.
 
 2. Plaintiffs' Threatened Concrete Interest
 
 22
 In order to establish its standing to bring a suit, a plaintiff must show that it has a threatened concrete interest that is the basis for its standing. See Douglas County, 48 F.3d at 1500. County and City claim that proceeding with the Plan before the preparation of a PEIS studying the "cumulative and synergistic effects" of the various water projects within the Settlement Act will adversely affect both their land and their ability to make plans for and to protect local drinking water. Thus, they contend that the Interior's failure under NEPA to prepare a PEIS threatens their concrete interest in land management. We find that County and City have established this imminent threat to their concrete interests.
 
 
 23
 A plaintiff can establish the requisite threatened concrete interest for standing in cases like this where the plaintiff has the procedural right to protect its interest in land management by showing that it owns or manages land threatened by the challenged action or omission. See Douglas County, 48 F.3d at 1501. The plaintiff must show that the challenged action will threaten its land interests with reasonable probability. See id. at 1501 n. 6.
 
 
 24
 In Douglas County, Douglas County sued the Secretary of the Department of the Interior for failing to prepare an EIS as mandated by NEPA before designating an area of federal land a "critical habitat" under the Endangered Species Act. In order to show a concrete interest sufficient to establish standing, Douglas County produced an affidavit from the director of the county's Land Department. The director asserted that the federal government's land management of this "critical habitat" could adversely affect adjacent land owned by Douglas County. " 'By failing to properly manage for insect and disease control and fire, the federal land management practices threaten the productivity and environment of the adjoining [county] lands.' " 48 F.3d at 1501 (quoting the affidavit). We stated that Douglas County's "proprietary interest in its lands adjacent to the critical habitat represents [the] necessary 'concrete interest.' " Id. We held that Douglas County had shown the reasonable probability of the threat to its land because it was "logical for the County to assert that its lands could be threatened by how the adjoining federal lands are managed." Id.
 
 
 25
 Similarly, County and City have produced affidavits establishing that they possess and/or manage lands that would be adversely affected by the transfer of water rights under the Plan and under the fish recovery plan in § 207 of the Settlement Act. Various affiants, including the Mayor of the City and the County's Manager, stated that the two projects (plus others in the Settlement Act) will cause environmental harm to County and City lands, including fire hazards, airborne particles, erosion, unknown changes to the underground water supply system, and reduced quality of local drinking water. County and City each own or manage land that is in the same watershed as the lands designated for purchase by the Plan. Although the procedure for the purchase of water rights is lengthy, at least two purchase agreements have been accepted by the FWS and other specific land purchases are under consideration. It is reasonably probable that the transfer of a significant amount of water rights from the area adjacent to and surrounding County and City lands will affect those lands adversely in the absence of a PEIS examining their combined effects.
 
 
 26
 Significantly, the Interior's FEIS on the Plan noted likely adverse effects on the County and City's groundwater levels and quality. See FEIS § 4.3.3.1. It also stated that there was no data to determine the ultimate effects of the Plan on the groundwater levels and domestic supply of water in the Lahontan Valley. See FEIS § 4.3.3.2. The statement estimated that up to forty percent of the farmland in the Carson Division of the Newlands Project would be retired, see FEIS § 4.5, and noted the potential erosion problems from retired farmland, with concomitant dust problems. See FEIS § 4.4.2.
 
 
 27
 The "cumulative and synergistic" effects of the Settlement Act's other projects, such as its water rights acquisition program in § 207 designed to conserve and recover the cui-ui and Lahontan Cutthroat trout, see Settlement Act § 207, have not been studied at all. County and City have shown that the unexplored combined effect of these projects will threaten the environment of County and City lands. County and City have thus established the imminence of the threatened concrete interest necessary for procedural standing.
 
 
 28
 Appellees argue that the County and City do not have standing because they have failed to show the imminence of their injury. Appellees err by placing too much weight on the imminence requirement of injury-in-fact standing. Article III of the Constitution does require that a plaintiff's injury be "actual or imminent, not 'conjectural' or 'hypothetical.' " Defenders of Wildlife, 504 U.S. at 560, 112 S.Ct. 2130. Appellees, however, broaden this into a constant requirement for a "high degree of immediacy." A high degree of immediacy is required only in cases where "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." Id. at 564 n. 2, 112 S.Ct. 2130. By contrast, in this case, County and City are asserting an omission by Defendants and do not themselves control the acts causing the injury. Again, this is a case of procedural standing with its lowered standards for immediacy and redressability. See id. at 572 n. 7, 112 S.Ct. 2130; Douglas County, 48 F.3d at 1501.
 
 
 29
 In this case, although it is not clear when further land purchases will occur and water rights will be transferred to the wetlands, it is clear that the Secretary intends to purchase 55,000 acre feet of water rights in the Carson Division--in County and near City--and has already started. One estimate of the time involved is that it will take twenty years for all the purchases and transfers. It is clear that water rights will also be purchased under the Settlement Act's other programs. County and City do not have to wait for all purchases and transfers to be completed before they have standing. They have shown that their injury is not hypothetical or speculative, but is imminent, caused by the FWS's failure to prepare a PEIS, and redressable by the courts.
 
 
 30
 In arguing that the County's and City's injuries are not imminent, Defendants rely on the district court's analysis. The district court held that, in order to show imminence of injury, County and City had to own or manage land "actually affected by the challenged activity, not merely an area 'adjacent to' or 'in the vicinity' of the affected land." The district court cited to Lujan v. National Wildlife Federation, 497 U.S. 871, 887-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). National Wildlife Federation does not support that conclusion.
 
 
 31
 In National Wildlife Federation, the plaintiffs were challenging a series of decisions called the "land withdrawal review program" of the Bureau of Land Management. The plaintiffs claimed that they would lose recreational use and aesthetic enjoyment of the lands opened up to mining. One plaintiff claimed she used lands "in the vicinity of" a two million acre area, 4500 acres of which had just been opened up to mining. Thus, the plaintiff did not put forward any specific facts to show she was or would be personally affected by the decision, because she only claimed to use "unspecified portions of an immense tract of territory," parts of which might be mined. 497 U.S. at 889, 110 S.Ct. 3177. Rather, she made a "general allegation of injury." Id. The Supreme Court held that she had failed to produce specific facts showing an injury. See id.
 
 
 32
 National Wildlife Federation did not hold that all plaintiffs have to use the lands directly affected by the challenged action. Rather, it held that vague allegations of injury were insufficient for standing when unsupported by any specific showing that the plaintiffs' use of land was affected by the challenged decision. In this case, Appellants have shown that the Settlement Act's creation of multiple programs which will transfer water rights within County and near City is likely to affect adversely their lands.
 
 
 33
 County and City have shown with reasonable probability that implementation of the Plan prior to producing a PEIS threatens their concrete interests in land and water management.
 
 3. Requirements for Standing Under the APA
 
 34
 To establish their standing to bring this suit under the APA, County and City must show that there has been final agency action which adversely affected them, and that their injury falls within the zone of interests protected by the section of NEPA they claim was violated. See 5 U.S.C. § 702; Lujan v. National Wildlife Federation, 497 U.S. 871, 882-83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).
 
 
 35
 County and City have met this test. The FWS has effectuated a final agency action by producing its Record of Decision announcing that it would begin purchasing fifty-five thousand acre feet of water within the Carson Division for transfer to wetlands. The Record of Decision and the FEIS from the Interior clearly identified a significant amount of land within Churchill County and near the City of Fallon as land to be purchased by the government at some time. Land purchases have already started. Thus, the Record of Decision represents the "consummation" of the FWS's decisionmaking process and has determined the various actors' rights and obligations. Bennett v. Spear, 520 U.S. 154, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997).
 
 
 36
 In addition, County's and City's threatened land interests fall within the zone of interests of NEPA. We have previously held that the protection of the environment falls within NEPA's zone of interests. See Douglas County, 48 F.3d at 1501. Appellants assert that the environmental health of their lands and water supply is threatened by Defendants' action. Their threatened interest falls within NEPA's interest in preventing harm to the environment. County and City have established their standing to bring this suit under the APA.
 
 
 37
 In conclusion, County and City have each established their standing to bring this suit against Defendants. We therefore reverse the district court's summary judgment against County and City.
 
 IV. Intervention as of Right
 A. Timeliness of Appeal
 
 38
 Sierra Pacific Power Company ("Sierra Pacific") motioned the district court to intervene as of right as a defendant in County's and City's suits. It appeals the district court's decision to limit its intervention to the remedial phase of the trial, excluding it from the merits phase. As a preliminary matter, County and City argue that Sierra Pacific's appeal was not timely.
 
 
 39
 Under Federal Rule of Appellate Procedure 4(a), a notice of appeal must be filed within sixty days "after the date of entry of the judgment or order appealed from" when a United States agency is a party. Fed. R.App. Pro. 4(a). Sierra Pacific filed its notice of appeal on April 25, 1997. County and City argue that Sierra Pacific's appeal is an appeal from the district court's order denying full intervention. That order was filed on December 30, 1996. Sierra Pacific argues that it could not appeal the December 30 order denying full intervention but had to wait for the final judgment in the underlying case dated February 28, 1997. The appeal is only timely if Sierra Pacific's time for appeal runs from the final judgment in the case.
 
 
 40
 A denial of intervention as of right is an appealable final order. See United States v. City of Oakland, 958 F.2d 300, 302 (9th Cir.1992). The district court in this case, however, did not deny intervention as of right. On the contrary, the court granted intervention, with the significant limitation that Sierra Pacific could only participate in the remedial phase of the trial. See Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1499 (9th Cir.1995) (characterizing intervenors with an identical limitation of intervention as "entitled to intervene as of right").
 
 
 41
 In Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), the district court denied a request to intervene as of right, but granted a request to intervene permissively with significant limitations. See 480 U.S. at 373, 107 S.Ct. 1177. The Supreme Court reasoned that, because the intervenor was "now a party to the suit by virtue of its permissive intervention, it can obtain effective review of its claims on appeal from the final judgment." Id. at 375, 107 S.Ct. 1177. The Court therefore held that the intervenor did not have the right to appeal the intervention decision as a collateral order prior to a final judgment on the merits. See id.
 
 
 42
 Although the intervenor in this case is more limited than the intervenor in Stringfellow, because it can only participate in the remedial phase deciding the "propriety and scope" of an injunction, Stringfellow is still controlling. Sierra Pacific could not appeal the district court order granting and limiting intervention, because it had the right to appeal from final judgment in the case by virtue of its status as a party.
 
 
 43
 This seems somewhat strange in the present case, in which the intervenor, allowed to participate only in the remedial phase, is appealing from a final judgment in a trial which never even reached the remedial phase. However, the Supreme Court in Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), made it clear that the collateral order doctrine is narrow, should not be applied on a case-by-case basis, and does not apply unless the order "would render ... important questions effectively unreviewable on appeal from final judgment in the underlying action." Id. at 1995-96.
 
 
 44
 Here, as a party to the remedial phase, Sierra Pacific had the right to appeal a final judgment in the case. Therefore, it did not have the right to appeal as a collateral order the district court's order denying it full intervention. Accordingly, its appeal must be considered an appeal of the final judgment entered on February 28, 1997. The appeal was timely because it was filed within sixty days.
 
 B. Intervenor's Standing to Appeal
 
 45
 County and City also argue that, even if Sierra Pacific's appeal was timely, Sierra Pacific did not have standing to appeal because it was not "aggrieved" by the district court's action because the claims against Defendants, including Sierra Pacific as a Defendant-in-Intervention, were dismissed for lack of standing.
 
 
 46
 This argument fails. While generally a party cannot appeal a favorable decision, see, e.g., Native Village of Tyonek v. Puckett, 957 F.2d 631, 633-34 (9th Cir.1992), Sierra Pacific is not appealing the favorable decision represented by the final judgment, but a previous unfavorable order that it could not appeal until final judgment was entered. See Portland Audubon Soc'y v. Hodel, 866 F.2d 302 (1989) (considering both the dismissal of plaintiffs' injunction action and defendants-in-intervention's cross-appeal of their limited intervention). Sierra Pacific can appeal.
 
 C. Sierra Pacific's Right to Intervene
 
 47
 Sierra Pacific appeals the district court's decision not to allow it to intervene as of right on the merits of the underlying action.
 
 
 48
 Federal Rule of Civil Procedure 24(a) requires the applicant for intervention to claim an interest "relating to the property or transaction which is the subject of the action," the protection of which may be impaired or impeded by the action if the applicant cannot participate in the litigation. See Fed. R. Civ. Pro. 24(a). We apply a four-part test under this rule:
 
 
 49
 "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."
 
 
 50
 Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1493 (9th Cir.1995) (quoting Sierra Club v. United States Envtl. Protection Agency, 995 F.2d 1478, 1481 (9th Cir.1993)).
 
 
 51
 The district court in this case held that Sierra Pacific did not meet the second element of this test-that Sierra Pacific did not have a "significantly protectable" interest in the underlying action that would entitle it to intervene during the merits phase. The district court relied on our rule that the federal government is the only proper defendant in an action to compel compliance with NEPA. See Forest Conservation Council, 66 F.3d at 1499 n. 11; Sierra Club, 995 F.2d at 1485; Portland Audubon Soc'y, 866 F.2d at 309. The rationale for our rule is that, because NEPA requires action only by the government, only the government can be liable under NEPA. A private party cannot "comply" with NEPA, and, therefore, a private party cannot be a defendant in a NEPA compliance action. See, e.g., Sierra Club, 995 F.2d at 1485.
 
 
 52
 Sierra Pacific proffers two arguments in an attempt to circumvent our rule. First, it contends that the County and City are seeking more than mere compliance with NEPA in their action against the Secretary. Sierra Pacific argues that Plaintiffs' suits "are more accurately characterized as attacks on the Settlement Act itself in an attempt to prevent its implementation." This characterization must fail. As the district court recognized in its order, "Plaintiffs' case clearly arises under NEPA. [Sierra Pacific] urges us to find to the contrary, but such a finding, based on the alleged violations and the relief sought, is simply unsupportable." Plaintiffs' claims and request for injunctive relief are firmly grounded on claims of NEPA violation.
 
 
 53
 Second, Sierra Pacific argues that the case of County of Fresno v. Andrus, 622 F.2d 436 (9th Cir.1980), represents an exception to our rule that only the federal government can be a defendant in a NEPA compliance action, and argues that Sierra Pacific falls within that exception. Whatever exception County of Fresno represents, however, has been limited by later decisions to the remedial phase of a trial. See Forest Conservation Council, 66 F.3d at 1499 n. 11; Sierra Club, 995 F.2d at 1485. Therefore, County of Fresno is unavailing to Sierra Pacific's request to intervene in the merits phase.
 
 
 54
 Sierra Pacific goes to great lengths in its briefs to show that it has a "significantly protectable" interest in the underlying action. These interests (e.g., its duty to protect the quality and quantity of water provided to its service and area, and its interest in the continuing construction of the Pinon Pine Power Plant) suffice only to grant them intervention in the remedial phase, as noted by the district court. Appellant does not have a "significantly protectable" interest in federal government compliance or noncompliance with NEPA. See Forest Conservation Council, 66 F.3d at 1499 n. 11; Sierra Club, 995 F.2d at 1485; Portland Audubon Soc'y, 866 F.2d at 309. Therefore, the district court did not err by limiting its intervention only to the remedial phase.[1]
 
 V. Conclusion
 
 55
 The district court's summary judgment in favor of Defendants for Plaintiffs' lack of standing is REVERSED and the case is REMANDED to the district court. The district court's decision to limit Sierra Pacific's intervention to the remedial phase is AFFIRMED. Each party shall bear its own costs.
 
 
 56
 REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
 
 
 
 *
 Hon. William L. Dwyer, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 Moreover, as we noted in Portland Audubon Soc'y, this holding does not prevent Sierra Pacific from requesting permission from the district court on remand to submit amicus briefs on the merits of the underlying NEPA action. See 866 F.2d at 309