**Robert W. HALL, Plaintiff–Appellant,**

v.

**Gale A. NORTON, Secretary of the Interior;\* United States Department of the Interior, Defendants–Appellees.**

**No. 99–16153.**

United States Court of Appeals, Ninth Circuit.

Sept. 12, 2001.

Submitted Jan. 8, 2001 \*\*

Filed Sept. 12, 2001

---

\* Gale A. Norton is substituted for her predecessor, Bruce Babbitt, as Secretary of the Department of the Interior. Fed. R.App. P. 43(c)(2).

\*\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Robert W. Hall, Las Vegas, Nevada, plaintiff-appellant, pro se.

Andrew M. Mergen, Stephen M. McFarlane, Steve Herm, and Kathryn E. Kovacs, Dept. of Justice, Washington, D.C., for the defendants-appellees.

Before: GOODWIN, GRABER and PAEZ, Circuit Judges.

PAEZ, Circuit Judge:

*Pro se* Plaintiff Robert W. Hall, a resident of Las Vegas, Nevada, brought this action against the Secretary of the Interior, alleging that the Bureau of Land Management (BLM), in approving an exchange of public land in the Las Vegas Valley for environmentally sensitive land owned by Del Webb Conservation Corporation (Del

Webb), violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370e, and the Clean Air Act, 42 U.S.C. §§ 7401–7671q. The district court granted summary judgment in favor of the Secretary, ruling that (1) it lacked subject matter jurisdiction over the Clean Air Act claim; and (2) Hall lacked standing to bring the NEPA claim. In this appeal, Hall challenges both of these rulings. Hall also contends that the district court abused its discretion when it denied his request for discovery on his NEPA claim and violated his due process rights when the court granted summary judgment without holding a hearing.

We affirm the district court's determination that it lacked subject matter jurisdiction over Hall's Clean Air Act claim. However, we reverse the district court's determination that Hall lacked standing and remand for further consideration on the merits of the NEPA claim. We also conclude that the district court did not abuse its discretion in denying Hall's request for discovery.[1]

## I.

### Background

The BLM manages approximately 48 million acres of public land in Nevada, including significant holdings in the Las Vegas Valley. In the last decade, the Las Vegas Valley has been among the fastest growing metropolitan areas in the United States, and the population growth has created significant interest among real estate developers in acquiring federal lands in the Las Vegas Valley. *See Environmental Assessment: Del Webb Land Exchange Proposal*, at 1–1 (May 9, 1997); Office of Inspector General, *Final Audit Report on Nevada Land Exchange Activities, Bureau of Land Management*, No. 96–I–1025, at 1.

The BLM is authorized to exchange federal lands that are under its management for non-federal lands if an exchange will serve the public interest. 43 U.S.C. § 1716. Prior to the land exchange at issue here, the BLM had completed a number of exchanges relinquishing federal lands in the Las Vegas Valley to private developers for non-federal lands. The BLM has identified substantial additional lands in the Las Vegas Valley as "available for disposal" to private developers.

This case arises out of Hall's objections to one particular land exchange. In 1996, the BLM entered into a non-binding agreement to initiate an exchange of 4,975 acres of federal land located in the Las Vegas Valley with Del Webb in exchange for privately owned lands in Nevada that the BLM deemed environmentally sensitive. Del Webb's proposal contemplates that Del Webb will build a planned community of approximately 11,200 homes on the land.

The BLM could not complete the transaction until it complied with the procedural requirements of NEPA. NEPA requires a federal agency to prepare a detailed Environmental Impact Statement (EIS) for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Federal regulations permit an agency that is planning a major federal action to conduct a less exhaustive Environmental Assessment (EA) first to determine whether the proposed action will "significantly affect" the environment and thus whether an EIS is required. 40 C.F.R. §§ 1501.4(b), 1508.9. If the EA shows that the proposed action will

---

**1.** Because we reverse the district court's grant of summary judgment, we need not address whether Hall's due process rights were violated when the district court granted summary judgment without holding a hearing.

have no significant impact, "the agency may issue a finding of no significant impact ('FONSI') and then execute the action." *Sierra Club v. Babbitt*, 65 F.3d 1502, 1505 (9th Cir.1995); *see also* 40 C.F.R. §§ 1508.9, 1508.13.

In 1997, the BLM prepared an EA for the Del Webb land exchange. The EA acknowledged that Las Vegas Valley is not in attainment with federal air-quality standards for carbon monoxide or particulate matter (dust and soot). The EA estimated the additional emissions of carbon monoxide and particulate matter that Del Webb's development of the land would generate. The EA cited a number of factors that it suggested demonstrated that the BLM land disposals would have no significant effect on overall development and air-pollution levels in the Las Vegas Valley. On May 21, 1997, based on the EA, the BLM issued a FONSI and a "Decision Record for the Del Webb Conservation Holding Corp. Exchange," approving the first stage of the Del Webb land exchange.

Hall brought this action in the United States District Court for the District of Nevada, raising a number of legal objections to the Del Webb land exchange, including the two principal claims Hall raises on appeal: (1) that the BLM failed to comply with NEPA; and (2) that the disposal of the federal land, by exacerbating the air quality problems of the Las Vegas Valley, violates the "conformity" provision of the Clean Air Act, CAA § 176(c)(1), 42 U.S.C. § 7506(c)(1). His lawsuit was consolidated with three other cases that raised similar challenges to the land exchange.[2]

The district court dismissed Hall's Clean Air Act claim on the ground that Hall filed his claim in the wrong court. The district court reasoned that because the United States Environmental Protection Agency (EPA) has exempted land exchanges from challenge under the conformity provision, *see* 40 C.F.R. § 93.153(c)(2)(xiv), Hall must assert that EPA's categorical exemption is invalid. And the district court concluded that, under 42 U.S.C. § 7607(b)(1), a challenge to the validity of a nationally applicable regulation can be brought only in the United States Court of Appeals for the District of Columbia. Accordingly, the court dismissed Hall's Clean Air Act claim. In doing so, the court rejected Hall's request that this claim be transferred rather than dismissed.

The district court also denied a pending request by Hall for discovery, ruling that judicial review of the remaining NEPA claim was limited to the administrative record.

The BLM then moved for summary judgment on Hall's NEPA claim, arguing that Hall lacked standing and that the NEPA claim was meritless. In response to the BLM's standing argument, Hall submitted an affidavit, which averred that: (1) he lives in the Las Vegas Valley; (2), since moving to the area, he "ha[s] developed a lung sensitivity to dust and air pollution" and experiences "a persistent and worrisome cough"; (3) he attributes his respiratory discomfort to Las Vegas' unsafe levels of airborne pollutants; (4) past BLM land exchanges and private development of previously owned federal land had resulted in significant emissions of particulate matter; and (5) he "regularly travel[s], shop[s], eat[s], visit[s] entertainment facilities, attend[s] meetings, [and] conduct[s] personal business and

---

2. The plaintiffs in the related cases raised a variety of claims, including NEPA violations which overlapped with Hall's NEPA claim. The district court disposed of their claims on

motions to dismiss and for summary judgment. The plaintiffs in the related cases did not appeal the district court's adverse rulings.

public service business throughout" areas of the Las Vegas Valley that have registered unsafe levels of airborne pollutants. As for the merits of the NEPA claim, Hall asserted that the BLM's own analysis demonstrated that Del Webb's development project would have a substantial negative effect on air quality in the Las Vegas Valley, that in any event the BLM's figures were "low and misleading," and that the BLM had not adequately considered the cumulative impacts of BLM actions in the Las Vegas Valley.

Without hearing oral argument, the district court granted the BLM's motion for summary judgment. The district court held that Hall lacked standing, particularly relying on its finding that "Hall's claim of injury from exposure to dust and air pollution as a result of land development in the Las Vegas area . . . fails to provide specific facts linking those harms to the particular lands which are the subject of the exchange." The district court also briefly addressed the merits of Hall's NEPA claim, in combination with similar contentions raised by the plaintiffs in the related cases. The district court found, in light of the EA's estimates of the emissions that could be expected from the Del Webb development, that the BLM's conclusion that the emissions would not be significant was not arbitrary and capricious. The district court, however, did not address fully Hall's cumulative impacts argument.

## II.

### Clean Air Act

■ We turn first to Hall's claim that the BLM's decision to transfer federal land to Del Webb violates the conformity provision of the Clean Air Act, CAA § 176(c)(1), 42 U.S.C. § 7506(c)(1).[3] We review *de novo* the district court's determination that it lacked subject matter jurisdiction. *Hexom v. Or. Dep't of Transp.,* 177 F.3d 1134, 1135 (9th Cir.1999).

After notice-and-comment rulemaking, EPA published a final rule exempting certain categories of government action from the conformity requirement. *Determining Conformity of General Federal Actions to State or Federal Implementation Plans,* 58 Fed.Reg. 63214 (Nov. 30, 1993). The rule exempts transfers of land by government agencies. 40 C.F.R. § 93.153(c)(2)(xiv). As the district court noted, Hall's Clean Air Act challenge to the Del Webb land exchange fails if this exemption is valid, so Hall's challenge necessarily must be considered as a challenge to the validity of the exemption.

■ Clean Air Act section 307(b)(1) provides that "[a] petition for review of . . . any . . . nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter [chapter 85, 42 U.S.C.] may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1); *see United States v. Walsh,* 8 F.3d 659, 664 (9th Cir.1993) ("Congress has provided that judicial review of the standards set by the EPA must be sought only in the United States Court of Appeals for the District of Columbia . . . [thereby] providing a single national forum for the

---

**3.** Section 176(c)(1) provides that no federal agency "shall engage in, support in any way or provide financial assistance for, license or permit, or approve, any activity which does not conform to [a state air-quality implementation plan]." CAA § 176(c)(1), 42 U.S.C. § 7506(c)(1). "Conformity to an implementation plan means," *inter alia,* "that such activi-

ties will not [ (i) ] cause or contribute to any new violation of any standard in any area; [ (ii) ] increase the frequency or severity of any existing violation of any standard in any area; or [ (iii) ] delay timely attainment of any standard or any required interim emission reductions or other milestones in any area." *Id.*

litigation of such standards."). Here, the applicable regulation, 40 C.F.R. § 93.153(c)(2)(xiv), is a nationally applicable regulation. The district court correctly concluded that it lacked subject matter jurisdiction and properly dismissed Hall's Clean Air Act claim.[4]

## III.

### *NEPA*

■ We turn then to the district court's grant of summary judgment against Hall on his NEPA claim. We review *de novo* the district court's grant of summary judgment. *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1211 (9th Cir.1998)

### A.

### *Standing*

■ The existence of standing is an issue of law that we review *de novo*. *Churchill County v. Babbitt*, 150 F.3d 1072, 1077 (9th Cir.), *amended by* 158 F.3d 491 (9th Cir.1998).

The standing inquiry focuses upon "[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy," *Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and serves to ensure that "legal questions presented to the court will be resolved ...

in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

The three fundamental elements of constitutional standing are injury in fact, causation, and redressability:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

■ In the case of a plaintiff "seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs," the plaintiff can establish standing "without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 & n. 7, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *accord Douglas County v. Babbitt*, 48 F.3d 1495, 1501 n. 6 (9th Cir.1995).[5]

---

4. Hall suggests that, if the claim was brought in the wrong court, the district court should have transferred the claim to the D.C. Circuit. As the government correctly argues, however, Hall was not entitled to transfer of this claim. Transfer to cure a jurisdictional defect is appropriate only where "the interests of justice would be served by the transfer." *Clark v. Busey*, 959 F.2d 808, 812 (9th Cir.1992). But "the interests of justice would not be served by transfer" of a case or claim in which "the plaintiff fails to make a prima facie showing of a right to relief." *Id.*

Here, Hall could not prevail in a challenge to 40 C.F.R. § 93.153(c)(2)(xiv) before the D.C. Circuit because that court upheld the EPA exemption in question in *Envtl. Defense Fund, Inc. v. EPA*, 82 F.3d 451, 465–67 (D.C.Cir.), *amended by* 92 F.3d 1209 (D.C.Cir. 1996).

5. In addition to the constitutional standing requirements, Hall also must satisfy the statutory standing requirements for a lawsuit brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Those

*Injury In Fact*

 Hall, in averring that his respiratory discomfort will be aggravated by emissions from developments on former BLM lands, asserts an injury that is sufficiently concrete and particularized to satisfy standing. The Supreme Court and this circuit have found standing based on averments that plaintiffs' activities had been curtailed due to concerns about pollution. *See Laidlaw,* 528 U.S. at 181–83, 120 S.Ct. 693 (holding that injury in fact adequately established by evidence that plaintiff avoided river because of concerns about defendants' discharges); *NRDC v. S.W. Marine, Inc.,* 236 F.3d 985, 994 (9th Cir. 2000) (holding that injury in fact established on basis of testimony that plaintiffs' "use has been curtailed because of their concerns about pollution, contaminated fish, and the like"), *cert. denied,* —— U.S. ——, 121 S.Ct. 2242, 150 L.Ed.2d 230 (2001); *Ecological Rights Found. v. Pac. Lumber Co.,* 230 F.3d 1141, 1149 (9th Cir. 2000) (concluding that injury in fact established where evidence is "sufficient to make credible the contention that the [plaintiff] . . . really has or will suffer in his or her degree of aesthetic or recreational satisfaction . . . if the area in question remains or becomes environmentally degraded").[6] It follows that evidence of a credible threat to the plaintiff's physical well-being from airborne pollutants falls well within the range of injuries to cognizable interests that may confer standing. *See Gaston Copper Recycling,* 204 F.3d at 154 (holding that environmental plaintiffs can establish justiciable injury based on injuries ranging from tortious personal injury to less traditional claims of injury, such as impairment of recreational and aesthetic enjoyment).

Moreover, because the rights Hall asserts under NEPA are procedural rights, our inquiry into the imminence of the threatened harm is less demanding. *See Lujan,* 504 U.S. at 572 & n. 7, 112 S.Ct. 2130; *Cantrell v. City of Long Beach,* 241 F.3d 674, 679 (9th Cir.2001). The BLM does not contend that Del Webb's planned construction lies too far in the future to satisfy this relaxed standard, and we have no difficulty concluding that Hall's injury is not too remote. *See Lujan,* 504 U.S. at 572 n. 7, 112 S.Ct. 2130 (holding that NEPA challenge to adequacy of environmental impact statement for proposed dam could be brought "even though the dam will not be completed for many years").

*Causation*

 The purpose of the standing doctrine is to ensure that the plaintiff has a concrete dispute with the defendant, not that the plaintiff will ultimately prevail

---

requirements are "(1) that there has been final agency action adversely affecting [Hall], and (2) that, as a result, [Hall] suffers legal wrong or that [his] injury falls within the 'zone of interests' of the statutory provision [he] claims was violated." *Churchill County,* 150 F.3d at 1077. It is clear that Hall meets these requirements: the BLM's decision not to prepare an EIS is a final agency action; and Hall's assertion that the BLM's failure to adequately consider the increased pollution that will result from the land exchange is an injury that falls within the zone of interests protected by NEPA.

6. *See also Soc'y Hill Towers Owners' Ass'n v. Rendell,* 210 F.3d 168, 176 (3d Cir.2000) (holding that "[t]he Residents have alleged concrete and particularized injury in the form of increased traffic, pollution, and noise"); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 156 (4th Cir. 2000) (holding that injury adequately established where plaintiff testified that his use of lake was constrained by "fears of pollution from [the defendant's] permit exceedances"); *Sierra Club v. EPA,* 129 F.3d 137, 139 (D.C.Cir.1997) (holding that interest in being free from increased auto emissions conferred standing).

against the defendant. Thus, Hall need not establish causation with the degree of certainty that would be required for him to succeed on the merits, say, of a tort claim. Rather, Hall need only establish "the 'reasonable probability' of the challenged action's threat to [his] concrete interest." *Churchill County*, 150 F.3d at 1078.

Here, Hall's claim of injury does not "rely on conjecture about the behavior of other parties." *Ecological Rights Found.*, 230 F.3d at 1152. The BLM acknowledges that Del Webb will develop the land and that the development will result in new emissions of airborne pollutants.

Nor does Hall's claim that Del Webb's action will result in injury to him require "an attenuated chain of conjecture." *Id.* Hall specifically avers that he travels throughout the Las Vegas Valley. It is undisputed that the Las Vegas Valley experiences levels of at least two airborne pollutants, carbon monoxide and particulate matter, that exceed levels deemed safe under federal air-quality standards. And it is not an implausible inference that in his travels Hall will be affected by the increased emissions of both airborne pollutants from the Del Webb development. Indeed, Hall's lawsuit attempts to force the BLM to consider more seriously the air pollution consequences of all the land disposals it is contemplating in the Las Vegas Valley. In sum, it is not unreasonable to infer that Hall will be affected by increased emissions attributable to the BLM's land exchange with Del Webb.[7]

### Redressability

■ Hall's "procedural right reduces [his] burden of proving redressability."

*Cantrell*, 241 F.3d at 682. A plaintiff, like Hall, who asserts inadequacy of a government agency's environmental studies under NEPA need not show that further analysis by the government would result in a different conclusion. *Id.* It suffices that, as NEPA contemplates, the BLM's decision could be influenced by the environmental considerations that NEPA requires an agency to study.

We reverse the district court's determination that Hall lacked standing.

### B.

### *Denial of Discovery*

■ We review for abuse of discretion the district court's decision to deny discovery. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir.1999).

■ A "fundamental principle[ ] of judicial review of agency action" is that:

[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court.

. . . The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (internal quotation marks and citations omitted). Hall asserts that this ad-

---

7. The BLM argues that Hall failed specifically to aver that he lives or travels in the vicinity of the Del Webb development and contends that such an averment is necessary because the evidence shows that the airborne pollu-

tants at issue here will be localized. However, a reasonable inference from Hall's uncontested affidavit is that his travels will take him within the vicinity of the Del Webb development.

ministrative record rule should not apply here because he had made a "strong showing of improper behavior" on the part of agency decisionmakers. *See Animal Def. Council v. Hodel,* 840 F.2d 1432, 1437 (9th Cir.1988), *amended by* 867 F.2d 1244 (9th Cir.1989). Hall's evidence of improper behavior was tenuous at best. Hall cited newspaper articles and internal government audits that questioned whether the BLM was receiving full value in exchange for the federal lands. But neither the newspaper articles nor the audits provide any evidence of wrongdoing. True, the newspaper articles speculated that Del Webb had advantageous connections that facilitated the transaction. Such speculation in newspaper articles, however, does not constitute the "strong showing of improper behavior" required by *Hodel.* The district court did not abuse its discretion in concluding that Hall had not made the requisite showing for discovery outside the administrative record.

## C.

### *Merits*

■ We review for abuse of discretion the BLM's decision not to prepare an EIS. *Blue Mountains Biodiversity Project,* 161 F.3d at 1211.

As the district court concluded, the BLM's analysis of the emissions from Del Webb's development of the exchanged land was "fully informed and well-considered." *Id.* (internal quotation marks and citations omitted). We perceive no "clear error of judgment" in the BLM's conclusion that project-specific emissions would not, considered alone, be "significant." *Id.*

The district court, however, failed to address a separate argument that Hall raised in his opposition to the government's summary judgment motion. In his opposition, Hall argued:

Defendants['] cumulative effects data are supposed to consist of the total of all *BLM* Valley emissions. [ ] Defendants blithely listed all Valley pollution from all air pollution sources instead of accounting for and totaling their own emissions from all BLM Valley activities as NEPA requires. That is real chutzpah. This is one of the many ways Defendants . . . evade NEPA.

Elsewhere, Hall's opposition expressed concern that the BLM's land exchanges cumulatively are contributing to the Las Vegas Valley's air-pollution problems.

Although Hall's *pro se* briefs before the district court are not pellucid, it is sufficiently clear that Hall's argument pertained to the fact that the EA acknowledged that an additional 57,000 acres of BLM land in the Las Vegas Valley had been "identified for disposal," but the EA did not attempt to quantify the cumulative emissions from potential development on these lands. NEPA requires that an agency consider cumulative impacts of an action and of foreseeable related actions. *See* 40 C.F.R. §§ 1508.7, 1508.27(b)(7).

■ In its order granting summary judgment, the district court ostensibly addresses "cumulative impacts." In concluding that the BLM's assessment of cumulative impacts was adequate, however, the district court cites the EA's conclusion that carbon monoxide and particulate matter emissions *from lands exchanged to Del Webb* would constitute only a small proportion of the Las Vegas Valley's overall emissions. There is no discussion by the district court of the potential emissions from the other 57,000 acres of land "identified for disposal" or the adequacy of the BLM's analysis of those emissions. Given the procedural posture of this case, we are not convinced that the district court fully considered Hall's cumulative impacts argument.

We thus reverse the district court's grant of summary judgment in favor of the Secretary on Hall's NEPA claim and remand for further proceedings on that claim.

## IV.

### Conclusion

The dismissal of Hall's Clean Air Act claim is AFFIRMED, and summary judgment in favor of the Secretary on the NEPA claim is REVERSED. We REMAND to the district court for further proceedings consistent with this opinion.