FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 19 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GOAT RANCHERS OF OREGON, an unincorporated association doing business in Oregon; CENTER FOR BIOLOGICAL DIVERSITY; BIG WILDLIFE, an Oregon nonprofit organization; KLAMATH SISKIYOU WILDLANDS CENTER, an Oregon nonprofit corporation; UMPQUA WATERSHEDS, an Oregon nonprofit corporation; CASCADIA WILDLANDS PROJECT, an Oregon nonprofit corporation; MOUNTAIN LION FOUNDATION, an Oregon nonprofit corporation, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> DAVID E. WILLIAMS, in his capacity as Oregon Wildlife Services State Director, Wildlife Services/USDA Animal and Plant Health; USDA ANIMAL AND PLANT HEALTH INSPECTION SERVICE (APHIS), <br><br> Defendants - Appellees. | No. 09-35541 <br><br> D.C. No. 3:08-cv-00097-ST <br><br> MEMORANDUM[*] |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the District of Oregon
Janice M. Stewart, Magistrate Judge, Presiding

Argued and Submitted May 3, 2010
Portland, Oregon

Before: KLEINFELD, BEA and IKUTA, Circuit Judges.


Appellants have not established the causation and redressability of their injuries as required for Article III standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). To satisfy the Constitution's requirements for standing, appellants must show: "(1) actual or threatened injury (2) suffered as a result of the allegedly illegal conduct of the defendant, which (3) fairly can be traced to the challenged action and (4) is likely to be redressed by a favorable decision." Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1353 (9th Cir.1994) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 560.

Appellants failed to show that their alleged concrete injury in fact[1]—a decreased chance of seeing cougars in the wild and an increased chance of being harmed by trapping equipment—is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," Lujan, 504 U.S. at 561 (internal quotation marks and alterations of the quotations omitted), or that it is "likely, as opposed to merely speculative, that [their] injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 181 (2000).

Cougars are being culled under Oregon's own state-run, state-funded Cougar Management Plan. Oregon does not need federal approval to manage the cougars within its boarders, and has killed cougars without federal assistance. The Oregon Department of Fish and Wildlife is not a party before the court, and is free to continue (as it has indicated it will) the trapping and killing of cougars regardless of any relief available to appellants in this case. Whether or not the federal government assists Oregon, Oregon will continue to kill and trap cougars. With each cougar killed, the likelihood of appellants seeing a cougar in the wild is

---

[1] Because we hold that causation and redressibility are lacking, we assume, arguendo, that appellants alleged an injury with sufficient particularity to satisfy Article III standing.

3

decreased. Nothing that could happen in this case would change that. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."). Appellants have made no showing that whatever small probability they have of seeing a cougar in the wild will be reduced materially if the state does all rather than some of the cullings.

**Affirmed.**

*Goat Ranchers of Oregon v. Williams*, No. 09-35541

BEA, Circuit Judge, dissenting.

I dissent because I think a genuine issue of material fact exists as to whether the probability that Plaintiffs will see a cougar will decrease. On this record, that may depend on whether the Oregon Department of Fish and Wildlife ("ODFW") can kill cougars as effectively and quickly without the assistance of Wildlife Services.

A plaintiff bears the burden of establishing the three elements of Article III standing: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008). A plaintiff's burden with respect to establishing these elements increases at each stage of litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In response to a motion for summary judgment, a plaintiff must "'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal citation omitted).

Here, the district court held Plaintiffs lacked standing at the summary

1

judgment stage. Thus, the question we are asked to decide is whether Plaintiffs adduced evidence from which a rational trier of fact could have found facts sufficient to satisfy the elements of Article III standing. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the nonmoving party).

The relevant injury in this case is the reduced likelihood that Plaintiffs will see a cougar in Oregon. Based on this injury, the relevant inquiry for purposes of redressabilty is whether a judgment in favor of Plaintiffs could increase the likelihood that they will eventually see a cougar in Oregon.

First, a judgment in favor of Plaintiffs could affect Wildlife Services's participation, one way or another, in the killing of cougars in Oregon. "A plaintiff . . . who asserts inadequacy of a government agency's environmental studies under NEPA need not show that further analysis by the government *would* result in a different conclusion. It suffices that . . . the [agency's] decision *could* be influenced by the environmental considerations that NEPA requires an agency to study." *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001) (internal citation omitted) (emphasis added). Here, Plaintiffs were not required to show that further analysis under NEPA *would* cause Wildlife Services to terminate its agreement with ODFW. Rather, it is sufficient that further analysis under NEPA *could* cause

2

Wildlife Services to terminate its agreement with ODFW.

Second, although there is no evidence in the record that the total number of cougars that will eventually be killed in Oregon will decrease if Wildlife Services terminates its agreement with ODFW, there is evidence in the record sufficient to create a triable issue of fact as to whether *the rate* at which cougars will be killed will decrease if Wildlife Services stops killing cougars in Oregon. In the Cougar Management Plan, ODFW set a goal to kill a total of sixty-six cougars per year in three target areas. Without the assistance of Wildlife Services, ODFW killed only twenty-six cougars during the 2006–2007 winter, with five people working part-time. The following winter, ODFW killed twenty-three cougars with five people working part-time while Wildlife Services killed sixteen cougars with two people working part-time. The total cost of killing the cougars was nearly the same each year: $113,165 and $115,827, respectively. Yet, the number of cougars killed increased by 50% once Wildlife Services started killing cougars. Based on this evidence, a rational trier of fact could reach the same conclusion that the magistrate judge reached: "Clearly Wildlife Services is more efficient at killing cougars than ODFW."

It may well be that Oregon will be able to kill cougars just as fast as Wildlife Services did. But the facts in the record do not show such a determination can be

3

made as a matter of law. It may be that if Wildlife Services is enjoined, the rate at which cougars will be killed will decrease to the winter 2006–2007 level that preceded Wildlife Services's participation in the cougar-killing program. Or it may be that ODFW can enlist volunteers to hunt cougars with dogs as permitted by Oregon Revised Statute section 498.164(3) or increase its cougar-kill budget enough to replace the results brought about by Wildlife Services. But we cannot predict that with the certainty required for factual determinations in summary judgment proceedings.

If a trier of fact were to conclude that cougars will be killed at a slower rate without the participation of Wildlife Services, Plaintiffs can satisfy the elements of Article III standing. Plaintiffs' injury—the decreased likelihood of seeing a cougar—is fairly traceable to Wildlife Services's agreement to kill cougars and Wildlife Services's ability to kill cougars more quickly and more efficiently than does ODFW. Further, Plaintiffs' injury can be redressed, at least in part, by an order of the district court to enjoin Wildlife Services's killing of cougars until it complies with NEPA. Therefore, I would reverse the district court's order and remand for adjudication on the merits.