LA RAZA UNIDA OF SOUTHERN ALAMEDA COUNTY, etc., et al., Appellees,

v.

John VOLPE, Secty. Transportation, etc., et al., Appellants.

Nos. 72–1059, 72–1111.

United States Court of Appeals, Ninth Circuit.

Nov. 29, 1973.

---

James L. Browning, U. S. Atty., Donald M. Velasco, Dept. of Public Works, San Francisco, Cal., for appellants.

Mario Obledo, Mexican-American Legal Defense Fund, J. Anthony Kline (argued), Chief Counsel, San Francisco, Cal., for appellees.

Before CHAMBERS, HUFSTEDLER and SNEED, Circuit Judges.

## OPINION

SNEED, Circuit Judge:

This is an appeal from an order granting the plaintiffs' motions for a preliminary injunction restraining the defendants including the California Highway Commission, from proceeding with State Project 238, a proposed highway of 14 miles that will pass through three California cities, Hayward, Union City, and Fremont. The purpose of the injunction is to secure compliance by the California Highway Commission with 42

U.S.C. §§ 4622–4655, Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs; 23 U.S.C. § 502(3),[1] Federal-Aid Highway Act of 1968; 49 U.S.C. § 1653(f) of the Department of Transportation Act of 1966; 23 U.S.C. § 138, Federal-Aid Highway Act of 1968; and all Federal regulations promulgated under each of these provisions.[2]

The Commission's position on this appeal is that these provisions are applicable only in the sense that compliance is necessary in order to obtain federal funding. Under this interpretation the Commission would have an option to obtain federal funding by complying with these provisions. Failure to comply merely would deprive the State of federal funds. The determination whether the condition precedent to federal funding had occurred would be appropriate only at the final state of the approval process outlined in 23 U.S.C. § 106(a), the so-called "construction approval."[3]

1. Repealed by Pub.L.No.91–646, Title II, § 220(a)(10), 84 Stat. 1903.

2. The preliminary injunction which is the subject of this appeal provides in full:

  1. It is hereby ordered, adjudged, and decreed, that pending the further Order of the Court, state defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them or any of them are, each and all, hereby restrained and enjoined from:

  (a) Acquiring any further real property in the Cities of Hayward, Union City, and Fremont, California, for right-of-way for the Route 238 Project; and

  (b) Attempting to remove, threatening to remove, or acting to remove (by initiating contacts or making solicited or unsolicited offers or otherwise) any resident of premises located on or near proposed right-of-way for the Route 238 Project; and

  (c) Undertaking any other actions whatsoever in connection with the Route 238 Project that would materially affect the environment.

  2. It is further hereby ordered, adjudged and decreed, that commencing immediately, and thereafter until the further order of this Court, defendant Volpe, his officers, agents, servants, employees, attorneys, and all persons in active concert with them or any of them, each and all, are hereby restrained and enjoined from continuing to accord or to accord any approval to the Route 238 Project or plans, maps, or other documents connected therewith.

  3. It is further hereby ordered, adjudged and decreed, that no person restrained and enjoined by this Preliminary Injunction shall undertake to avoid compliance by any indirection.

  4. Any person enjoined by this Preliminary Injunction may move for termination upon showing that Federal and State defendants have fully and reasonably complied with Sections 205 and 210 of the

Uniform Relocation Assistance and Land Acquisition Policies Act of 1970, P.L. 91–646, 84 Stat. 1894; Section 502(3) of the Federal-Aid Highway Act of 1968, 23 U.S.C. § 502(3); Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f); Section 138 of the Federal-Aid Highway Act of 1968, 23 U.S.C. § 138; and all Federal Regulations promulgated under each of said statutes. La Raza Unida v. Volpe, 337 F.Supp. 221, 234 (N.D.Cal., 1971).

3. The Federal-Aid Highway Act, 23 U.S.C. § 101 et seq., establishes a federal grant-in-aid program whereby the federal government, through the Federal Highway Commission, [FHWA], will assist in funding the construction of highways on the interstate, primary and urban systems of federal-aid highways provided that the State complies with the standards set forth in the Act. The program is administered through the FHWA's approval of "projects" submitted by the states to obtain federal reimbursement; and funding is ultimately dependent upon the successful completion of a series of successive stages at which FHWA reviews and approves the plans for each project which has been submitted.

  Two of the approvals upon which funding depend are statutorily mandated. These are known as "program approval", 23 U.S.C. § 105(a), and "approval of plans, specifications and estimates" or "P S & E approval", 23 U.S.C. § 106(a). Program approval, which is to occur "as soon as practicable after the apportionments for the Federal-aid systems have been made for any fiscal year", 23 U.S.C. § 105(a), and which is necessary to enable the State to receive any reimbursement for a project, does not impose on the federal government a contractual obligation to pay its share of the project's costs. It is not until there has been "P S & E" approval, which is normally deferred until the state is actually ready to re-

As a consequence, the Commission argues, it would have been appropriate for the District Court to have entered a declaratory judgment that the statutes here involved were applicable if federal funds are to become available and to have enjoined the Federal Government from making funds available to the project "until and unless the requirements are met and approved by the Court," (Appellant's Reply Brief, p. 5.) Under no circumstances should a state be *enjoined* to comply. The carrot of federal funding, not the stick of an injunction, insists the Commission, is the only compulsion authorized by the applicable statutory and regulatory scheme.

We do not agree with the Commission's interpretation of these provisions. The general purpose of these statutes and regulations is to assure that projects for which federal funding might become available are carried out in a way that will afford the protection both to those displaced that 42 U.S.C. §§ 4622–4655 provides and to the environment, including public parks, that is commanded by 49 U.S.C. § 1653(f) and 23 U.S.C. § 138. The effectuation of this purpose makes necessary both the carrot and the stick. Without the stick there will be fewer instances in which compliance with these provisions will be achieved. This is true because the Commission under its interpretation would be able to secure the program approval contemplated by 23 U.S.C. § 105 for a greater number of projects than could be funded by the sums apportioned and made available pursuant to 23 U.S.C. § 104 and § 106(a) and to qualify for actual funding only those projects with respect to which compliance proved to be relatively easy and inexpensive.

We believe that Judge Peckham correctly interpreted the applicable statutes and regulations to require compliance by the Commission with those provisions providing relocation assistance and protecting the environment "before location approval, [and] prior to federal funding of a project." La Raza Unida v. Volpe, 337 F.Supp. 221, 231 (N.D.Calif.1971). Moreover, it is our view that it is much too late for the State to avoid compliance by withdrawing State Project 238 from the Federal-aid system described in 23 U.S.C. § 103.

ceive reimbursement funds, that any binding obligation arises. 23 U.S.C. § 106(a).

In conjunction with the required statutory approvals, there are three additional approvals which are mandated by the applicable administrative regulations. Under 23 U.S.C. § 128(a), the state highway department must certify that it has given formal consideration to "the social, economic, environmental, and other effects" of a proposed route and its alternative possibilities. In order to meet this requirement, where the *proposed* highway is to pass through a city FHWA regulations require the State to hold a public hearing—called the "corridor hearing"—on the location of the route. Assuming that the State has held such a hearing, and fully complied with all other "applicable laws and regulations", Policy and Procedure Memorandum (PPM) 20–8 (January 14, 1969), then "location approval" is accorded the project. The State must then hold a second hearing—called the "design hearing"—concerning the proposed engineering design for the project. Again, the State must demonstrate compliance with all federal laws and regulations before "design approval" is given. Both location approval and design approval follow program approval of the project but must occur before P S & E approval is given under Section 106.

At some point, prior to P S & E approval, the State is required, *inter alia*, to give "satisfactory assurances" that it can provide prospective displacees with adequate relocation housing and payments. 23 U.S.C. § 502. *See also* Information Memorandum 80–1–68. In addition, it must also prepare and submit an environmental impact statement as required by the National Environmental Policy Act of 1969. 42 U.S.C. § 4321 et seq. *See* Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1971). If these requirements are met, together with all other applicable laws and regulations, then P S & E approval is given under 23 U.S.C. § 106 and the federal government becomes bound to contribute to the project.

Generally P S & E approval leads to right-of-way acquisition and preparation for construction. Assuming that *no problems* arise, the final FHWA approval, known as "authorization to proceed with work approval", PPM 21–1 (April 15, 1950), is then received and actual construction of the project begins.

Whether a withdrawal for this purpose would be effective if attempted subsequent to the program approval of 23 U.S.C. § 105 but prior to obtaining the location approval, which is required by Policy and Procedure Memorandum, 20–8, Bureau of Public Roads, U. S. Department of Transportation (1969), is not before us. For present purposes it is enough to observe that such withdrawal must be clear and unambiguous and prior to causing significant harm either to those who might be displaced by the project or to the environment in a manner inconsistent with the intent of 49 U.S.C. § 1653(f) and 23 U.S.C. § 138.

Under the facts of the case before us, we see no reason to disturb the preliminary injunction ordered by the District Court. It is consistent with the position taken by this Circuit in Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1971).

Affirmed.