Don LAUB; Debbie Jacobsen; Ted Sheely; California Farm Bureau Federation, Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; Gale A. Norton, Secretary, Department of the Interior; United States Environmental Protection Agency; Marianne Horinko, in her official capacity as Acting Administrator of the U.S. EPA; Department of the Army, (Civil Works); Joseph W. Westphal, Dr., in his official capacity as Assistant Secretary of the Army (Civil Works); Donald Evans, in his official capacity as Secretary, U.S. Department of Commerce; United States Department of Commerce; U.S. Department of Agriculture; Ann M. Veneman, In her official capacity as Secretary, U.S. Department of Agriculture; U.S. Army Corps of Engineers; Peter T. Madsen, Brigadier General, in his official capacity as Commander, South Pacific Division, U.S. Army Corps of Engineers; Natural Resources Conservation Service; Charles Bell, in his capacity as California State Conservationist, U.S. Department of Agriculture, Natural Resources Conservation Service; National Marine Fisheries Service; Rebecca Lent, Dr., Regional Administrator, National Marine Fisheries Service; U.S. Fish & Wildlife Service; Stephen Thompson, in his official capacity as Manager of California–Nevada Operations of the U.S. Fish & Wildlife Service; United States Bureau of Reclamation; Kirk C. Rodgers, in his official capacity as Director, Mid–Pacific Region of the U.S. Bureau of Reclamation; Gray Davis, Governor of the State of California; California Resources Agency; Mary D. Nichols, in her official capacity as Secretary of the California Resources Agency; California Environmental Protection Agency; Winston Hickox, in his official capacity as Secretary of the California Environmental Protection Agency, Defendants–Appellees.

No. 02–15104.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2003.

Filed Sept. 8, 2003.

Nancy N. McDonald, Brenda Jahns Southwick, Rebecca Dell Sheehan, Sacramento, CA, for appellants Laub, Jacobsen,

Sheely and the California Farm Bureau Federation.

Christopher H. Buckley, Jr., Rachel A. Clark, Gibson, Dunn & Crutcher LLP, Washington, DC, for appellant California Farm Bureau Federation.

Thomas L. Sansonetti, Maria Iizuka, David C. Shilton, Silva Quast, United States Department of Justice, Washington, DC, for the Federal appellees.

Bill Lockyear, Richard M. Frank, Matthew Rodriquez, Gordon Burns, Office of the Attorney General of California, Sacramento, CA, for the State appellees.

Before NOONAN, THOMAS and CLIFTON, Circuit Judges.

## OPINION

THOMAS, Circuit Judge.

This appeal presents the question of whether an action under the National Environmental Protection Act (NEPA), 42 U.S.C. § 4321 *et seq.*, against various federal and state government defendants[1] challenging a proposed plan for managing the California Bay–Delta water resources is ripe for judicial review before site-specific action is taken. We hold that it is and reverse the district court. Because the record is not sufficient to ascertain wheth-

---

1. All of the defendant federal agencies and officials will be referenced collectively as the "Federal Defendants." All of defendant state agencies and officials shall be referenced collectively as the "State Defendants." Pursuant to Fed. R.App. 43(c)(2), Marianne Horinko, Acting Administrator for the U.S. Environmental Protection Agency is substituted for Christine Todd Whitman, former Administrator of the Environmental Protection Agency.

Charles Bell, California State Conservationist for the U.S. *Department of Agriculture is* substituted for his predecessor, Jeffrey R. Vonk. Stephen Thompson, Manager, California–Nevada Operations, U.S. Fish & Wildlife Service, is substituted for his predecessor Michael J. Spears. Kirk C. Rodgers, Regional Director, Mid–Pacific Region, U.S. Bureau of Reclamation, is substituted for his predecessor, Lester A. Snow.

er the State Defendants' participation in the water management program is sufficiently independent of federal control to escape the requirements of NEPA, we reverse the district court's determination that certain land and water acquisitions undertaken pursuant to the program did not constitute a federal action, and remand with instructions to permit discovery on this question.

I

At issue in this case is the CALFED Bay–Delta program (CALFED program), a cooperative interagency effort of eighteen State and Federal agencies with management or regulatory responsibilities for California's San Francisco Bay/ Sacramento–San Joaquin Delta (Bay–Delta). The Bay–Delta estuary is the largest estuary on the West Coast, including over 738,000 acres in five counties and supplying drinking water for two-thirds of Californians and irrigation water for over seven million acres of highly productive agricultural land. The CALFED program describes itself as "the largest, most complex water management program in the world," engaged in "the most complex and extensive ecosystem restoration project ever proposed."

CALFED was formed in summer 1994 when the federal and state governments executed a "Framework Agreement" to establish "a comprehensive program for coordination and communication" in order to advance environmental protection and water supply dependability in the Bay–Delta estuary. In late 1995 and early 1996, the governmental entities executed a "Memorandum of Understanding For Preparation of Environmental Impact Statement/Report" (MOU), in order to "coordinate preparation of a single environmental document that satisfies both NEPA and CEQA."[2] The parties agreed that "the CALFED Bay–Delta Program interagency team will be responsible for preparation of the EIS/EIR under CALFED's general direction."

Pursuant to this agreement, in July 2000, CALFED issued a programmatic environmental impact statement/ environmental impact report (EIS/EIR). The EIS/EIR identified a Preferred Program Alternative which, among other actions, would "convert agricultural lands to other uses, including habitat, levee improvements, and water storage." In August 2000, CALFED certified the EIS/EIR in a Record of Decision (ROD). The ROD stated that it "represents the culmination of the National Environmental Policy Act (NEPA) and the California Environmental Quality Act (CEQA) processes," and "reflects a final selection of a long-term plan (Preferred Program Alternative) which includes specific actions, to fix the Bay–Delta, describes a strategy for implementing the plan, and identifies complementary actions the CALFED agencies will also pursue." Attached to the ROD were two agreements entered into by the state and federal governments: the "Implementation Memorandum of Understanding" (IMEU) and the "Environmental Water Account Operating Principles Agreement" (EWA). The EWA is described as "a cooperative management program whose purpose is to provide protection to the fish of the Bay–Delta estuary through environmentally beneficial changes in the operations of the

**2.** "CEQA" refers to the California Environmental Quality Act, Cal. Pub. Resources Code § 21000, et. seq., which is California's state version of NEPA. "EIS" is an acronym for an environmental impact statement; "EIR" is an acronym for an environmental impact report. The CEQA requires an EIR rather than an EIS, which is required under NEPA. *Laguna Greenbelt, Inc. v. U.S. Dept. of Transp.,* 42 F.3d 517, 522 n. 1 (9th Cir.1994). Acronyms are not required by any federal statute, but seem to be the preferred lexicon of environmental law.

State Water Project (SWP) and federal Central Valley Project (CVP)." The program's approach to fish protection "requires the acquisition of alternative sources of project water supply."

Plaintiffs are individual farmers Don Laub, Debbie Jacobsen, and Ted Sheely, and the California Farm Bureau Federation. In response to the issuance of the CALFED EIS/EIR and ROD, Plaintiffs filed suit in federal district court for the Eastern District of California, alleging that the Defendants failed to follow procedures mandated by NEPA and CEQA when promulgating the CALFED EIS/EIR and ROD. Specifically, Plaintiffs' theory is that Defendants failed to consider any reasonable alternatives to the proposed conversion of agricultural resources to environmental uses, that they failed to consider the direct, indirect and cumulative impacts of projects that will cause significant effects on agricultural resources, and that their analysis of mitigation options is inadequate.

On August 27, 2001, the district court dismissed the CEQA claims against the State Defendants with prejudice based on application of the Eleventh Amendment, a decision that Plaintiffs have not appealed. However, the district court retained jurisdiction over the NEPA claims against the Federal Defendants and invoked the *Ex Parte Young* doctrine to retain jurisdiction over the individual State Defendants.

On August 29, 2001, the district court granted the Federal Defendants Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction without prejudice, holding that the issuance of EIS/EIR was not a final agency action ripe for review. The court further determined that chal-

lenged state site-specific acquisitions of land and water were not federalized under NEPA; thus, the court had no jurisdiction over the State Defendants. The court also denied Plaintiffs' request for discovery and briefing on the question of the federal government's level of involvement in the state land and water acquisitions. However, the district court dismissed Plaintiffs' complaint with leave to amend.

Plaintiffs then moved for reconsideration of the dismissal. In the alternative, Plaintiffs requested that the district court dismiss the entire action without prejudice in order to permit appeal because *WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136–37 (9th Cir.1997) (en banc) holds that dismissal of a complaint with leave to amend was not an appealable final judgment. On December 11, 2001, the district court denied Plaintiffs' motion for reconsideration and granted their request to dismiss the entire action without prejudice and without leave to amend. This timely appeal followed.

## II

■■■ Ripeness is a question of law we review de novo. *Daniel v. County of Santa Barbara,* 288 F.3d 375, 380(9th Cir. 2002). We review dismissal for lack of subject matter jurisdiction de novo. *McGraw v. United States,* 281 F.3d 997, 1001 (9th Cir.2002), *amended by* 298 F.3d 754 (9th Cir.2002). We review a district court's rulings concerning discovery for an abuse of discretion. *Panatronic USA v. AT&T Corp.,* 287 F.3d 840, 846 (9th Cir. 2002).

■■■ The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1361.[3] The district court dismissed Plain-

---

**3.** Plaintiffs filed suit under Section 10 of the Administrative Procedure Act (APA). *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof."). However, this statute does not itself provide federal subject matter jurisdiction permitting judicial review of

tiffs' action without prejudice. A dismissal of an action without prejudice is a final appealable order. *De Tie v. Orange County,* 152 F.3d 1109, 1111 (9th Cir.1998); *Ash v. Cvetkov,* 739 F.2d 493, 496 (9th Cir. 1984).[4] Thus, we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III

The Federal Defendants have raised Plaintiffs' alleged lack of constitutional standing for the first time on appeal. In fact, they explicitly declined to raise the issue of standing below, stating in their reply brief that "the Federal Defendants have not argued that the plaintiffs lack standing." This turnabout is undoubtedly troubling to Plaintiffs, as it is to us. Nonetheless, "[a]s a jurisdictional issue, standing may be addressed for the first time on appeal." *Arakaki v. Hawaii,* 314 F.3d 1091, 1097 (9th Cir.2002) (citing *Pritikin v. Dep't of Energy,* 254 F.3d 791, 796 (9th Cir.2001)). Indeed, because it implicates jurisdiction, a challenge to constitutional standing is one "which we are required to consider, even though raised for the first time on appeal." *Newdow v. U.S. Congress,* 313 F.3d 500, 503 (9th Cir.2002) (citing *United States v. Viltrakis,* 108 F.3d 1159, 1160 (9th Cir.1997)).

 The party invoking federal jurisdiction bears the burden of establishing the following elements: (1) that the plaintiff has suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Hall v. Norton,* 266 F.3d 969, 975 (9th Cir.2001). When a party raises standing for the first time on appeal, we first examine the complaint and, if it fails to establish standing, the record. *Animal Protection Inst. of Am. v. Hodel,* 860 F.2d 920, 924 n. 6 (9th Cir. 1988). Here, the complaint alleges individualized injury to each of the plaintiffs, so we need not consider the record.[5]

The complaint alleges plaintiffs Laub's and Jacobson's injury as follows:

> The proposed implementation of CALFED's program would result in significant negative impacts on the environmental and economic health of the properties farmed by Laub and Jacobsen. CALFED's acquisitions and conversions of agricultural land and water would directly result in shortages of water supply on the west side of the San Joaquin Valley and have already prompted westside users to look beyond their existing sources (i.e. water from the Delta) to the sources of the east side of the San Joaquin Valley, like Laub's and Jacobsens. CALFED's proposed acquisition would ultimately result in the potential loss of Laub's and Jacobesen's farming operations, jobs, and related services.

It further alleges injury to plaintiff Sheely:

> CALFED's acquisitions would compete in markets historically relied· upon by Sheely's water supplier, WWD, among others in the area. CALFED's proposed acquisitions would ultimately re-

---

agency action. *See Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

4. The dismissal was by court order rather than by notice of voluntary dismissal. Thus, the rules governing appealability of voluntary dismissals under Fed.R.Civ.P. 41(a)(1) are not

implicated. *See, e.g., Duke Energy Trading & Marketing.,* 267 F.3d 1042, 1049 (9th Cir. 2001); *Concha v. London,* 62 F.3d 1493, 1506 (9th Cir.1995).

5. Because of our resolution of this matter, we deny Plaintiff Ted Sheely's motion to supplement the record as moot.

sult in the potential loss of Sheely's farming operations, jobs, and related services. And, because the groundwater resources underlying his farm are of both poor quality and costly to extract, CALFED's proposed acquisitions would jeopardize Sheely's entire livelihood by preventing him from having access to an adequate, reliable, affordable water supply of good quality. Without this water supply he cannot produce his permanent and field crops, consisting of pistachios, cotton, tomatoes, and garlic, valued at $1.7 million.

Finally, the complaint alleges the interest of the California Farm Bureau Federation (Farm Bureau) as follows:

Plaintiff California Farm Bureau Federation is a non-governmental, non-profit, voluntary membership California corporation. The Farm Bureau's purpose is to work for the protection of agriculture and the rural environment, and to find solutions to the problems of the farm, the farm home and the rural community throughout the Central Valley and the State of California. Its members consist of 53 county Farm Bureaus and, through them, more than 94,000 individual family members, including over 20,000 members within the Central Valley counties of Calaveras, Fresno, Inyo, Kern, Kings, Madera, Mariposa, Merced, Stanislaus, Tulare and Tuolumne. CALFED's proposed acquisitions would result in severe negative environmental and economic impacts in our member's communities.

The complaint also alleged that plaintiffs Laub, Jacobsen, and Sheely are members in good standing of the Farm Bureau.

■ The individual plaintiffs meet *Lujan's* standard for injury in fact since each has alleged an invasion of a legally protected particularized interest which "affect[s] the plaintiff[s] in a personal and individualized way"—the loss of affordable irrigation water for their agricultural lands. *Lujan,*

504 U.S. at 560 & n. 1, 112 S.Ct. 2130. Therefore, they have adequately alleged that they will be "directly affected apart from their 'special interest' in the subject," as *Lujan* requires. *See id.* at 563, 112 S.Ct. 2130; *See also Churchill County v. Babbitt,* 150 F.3d 1072, 1079(9th Cir.1998), *amended,* 158 F.3d 491 (9th Cir.1998) (plaintiffs had concrete interest sufficient for standing when there was reasonable probability that transfer of water rights from surrounding areas would adversely affect their lands).

Although the Federal Defendants correctly note that *Lujan* explicitly rejects procedural injury alone as sufficient to establish injury in fact, *see Lujan,* 504 U.S. at 572–73, 112 S.Ct. 2130, Plaintiffs do not advance their procedural injury as the basis for injury in fact. Rather the injury alleged is the threatened harm to their farmlands. Thus, as *Lujan* requires, the parties seeking review are themselves among the injured. *See id.* at 563, 112 S.Ct. 2130. Because the individual plaintiffs have standing, we need not consider whether the Farm Bureau has standing. *See Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 160, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981) (noting that because one plaintiff had standing to bring the suit, the court need not consider the standing of the other plaintiffs); *see also Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264 & n. 9, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (same).

Further, when a plaintiff seeks to enforce a procedural requirement, "the disregard of which could impair a separate concrete interest of theirs, the plaintiff can establish standing without meeting all the normal standards for redressability and immediacy." *Hall,* 266 F.3d at 975(quoting *Lujan,* 504 U.S. at 572 & n. 7, 112 S.Ct. 2130). The Federal Defendants assert that Plaintiffs are unable to show they will likely suffer immediate injury or iden-

tify "specific tangible actions that will immediately be taken under the PEIS/PEIR that will cause damage to them." This, they argue, indicates that Plaintiffs are unable to establish injury in fact. Yet when, as here, a procedural violation is the injury alleged, the requirements of immediacy of the threatened harm are relaxed. *Hall,* 266 F.3d at 975. Thus, the fact that Plaintiffs cannot show immediate harmful action will be taken based on the allegedly defective EIS is not fatal to establishing standing. *See Cen. Delta Water Agency v. United States,* 306 F.3d 938, 947 (9th Cir. 2002) ("[T]he possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes 'injury in fact.' ").

Here, Plaintiffs have satisfied the relaxed causation and redressibility requirements for a procedural standing case. *See Cantrell v. City of Long Beach,* 241 F.3d 674, 682(9th Cir.2001) ("Once a plaintiff has established injury in fact under NEPA, the causation and redressability requirements are relaxed."). The plan selected by the challenged EIS/EIR would "convert agricultural lands to other uses, including habitat, levee improvements, and water storage," and would reallocate agricultural waters in some areas. Plaintiffs have alleged that this would adversely impact their ability to maintain current irrigation levels in their farmlands. Thus, Plaintiffs have adequately alleged that the proposed action will endanger their interests. *See Churchill County,* 150 F.3d at 1078 (to establish causation, a plaintiff need only show a " 'reasonable probability' of the challenged action's threat to its concrete interest.' ").

In order to establish redressability, plaintiffs asserting the inadequacy of an agency's EIS, as Plaintiffs do here, need not show that further analysis by the government would result in a different conclusion. *See Hall v. Norton,* 266 F.3d 969, 977 (9th Cir.2001). Rather, they need only show that the decision could be influenced by the environmental considerations that NEPA requires an agency to study. *Id.* NEPA's implementing regulations require an EIS to include the economic effects of a federal action, and its proximity to "prime farmlands." *See* 40 C.F.R. § 1508.8 ("effects" include economic effects); 40 C.F.R. § 1508.27(requiring consideration of "unique characteristics of geographic area such as proximity to ... prime farmlands."). Therefore, CALFED's decision to convert agricultural land and water to other uses could be influenced by an environmental analysis that properly considered the above effects.

Accordingly, we conclude that the Plaintiffs have adequately alleged an injury in fact sufficient to confer constitutional standing.

## IV

The district court erred in holding that Plaintiffs' NEPA claims were not ripe for review. NEPA claims are reviewed under the APA. *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 375–76, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). In addition to constitutional standing requirements, Plaintiffs must also meet the APA's standing requirements that there be (1) a final agency action; and (2) that the plaintiff suffers an injury that falls within the "zone of interests" of the violated statutory provision. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).[6]

**6.** The Federal Defendants argue for the first time on appeal that Plaintiffs' injuries are not within the zone of interests protected by NEPA because they have alleged only economic losses, despite their general allegations that their injuries are "environmental." Yet because the zone of interests test is merely prudential rather than constitutional it is

■ The district court determined that Plaintiffs failed to meet the ripeness requirement embodied in the first prong of the APA test for prudential standing—that the challenged action be a final agency action. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882–83, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The district court, citing *Whitman v. American Trucking Associations, Inc.,* 531 U.S., 457, 478, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001), reasoned that because "the CALFED ROD and PEIS/EIR simply outline a program by which state and federal officials and agencies commit to work together to achieve strategies in order to implement a long-term plan to solve environmental problems," the issuance of the EIS/EIR does not "mark the consummation of the decisionmaking process" and therefore does not constitute a final agency action subject to review under the APA. The district court determined that "[a]ny future site-specific federal actions, if they significantly affect the quality of the human environment, will have to then comply with NEPA." Plaintiffs counter that the question of whether an agency has complied with NEPA's procedural requirements in formulating a programmatic EIS is immediately ripe for review before any site-specific action is taken. We agree.

This case is akin to *Idaho Conservation League v. Mumma,* 956 F.2d 1508 (9th Cir.1992). In that case, environmental organizations brought a NEPA challenge to a forest service EIS recommending against wilderness designation in certain roadless areas. As do the Federal Defendants here, the Forest Service in *Idaho Conservation League* argued that the case was unripe for review because "actual,

site-specific decisions regarding development are made at a later stage, and each decision must be accompanied by an EIS calibrated to the project's degree of specificity," and the "ultimate decision regarding wilderness designation lies in Congress' not the agency's, hands." *Id.* We rejected this argument, holding that the case was ripe because

> to the extent the EIS and ROD have an impact on Congress' final decision, waiting until the Department acts on a specific project would not be an adequate remedy. Moreover, a future challenge to a particular, site-specific action would lose much force once the overall plan has been approved—especially if the challenge were premised on the view that the overall plan grew out of erroneous assumptions.

*Id.* at 1520.

Here, as in *Idaho Conservation League,* the Preferred Program Alternative set out in the EIS will influence subsequent site-specific actions. The ROD explains the process as follows:

> Whenever a broad environmental impact analysis has been prepared and a subsequent narrower analysis is then prepared on an action included within the entire program or policy, the subsequent analysis need only summarize the issues discussed in the broader analysis and incorporate discussions from the broader analysis by reference. This is known as tiering. Tiered documents focus on issues specific to the subsequent action and rely on the analysis of issues already decided in broader programmatic review. Absent new information or sub-

---

waivable, and Defendants have waived it by not raising it below. *See Port of Astoria v. Hodel,* 595 F.2d 467, 474 (9th Cir.1979) (zone of interests tests is non-constitutional prudential limitation on the exercise of jurisdiction); *See also Bd. of Natural Res. v. Brown,* 992

F.2d 937, 945–46 (9th Cir.1993) (arguments raising prudential limitations may be deemed waived if not raised below). However, the district court is not precluded from considering this issue on remand.

stantially changed circumstances, documents tiering from the CALFED Final Programmatic EIS/EIR will not revisit the alternatives that were considered alongside CALFED's Preferred Program Alternative nor will they revisit alternatives that were rejected during CALFED's alternative development process.

*See also* 40 C.F.R. § 1502.20(instructing agencies to tier their environmental impact statements and to "focus on actual issues ripe for discussion at each level," and noting that "[w]henever a broad environmental impact statement has been prepared (such as program or policy statement)" and a subsequent site-specific statement is then prepared, it "need only summarize the issues discussed in the broader statement by reference and shall concentrate on the issues specific to the subsequent action"). Thus, the Preferred Program Alternative set out in the EIS will determine the scope of future site-specific proposals. As we noted in *Idaho Conservation League*, "if the agency action only could be challenged at the site-specific development stage, the underlying programmatic authorization would forever escape review." 956 F.2d at 1516.

*Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346 (9th Cir.1994) also dictates that this case is ripe for judicial review. There, we determined that a challenge to a Forest Service programmatic EIS proposing the application of herbicides was reviewable before any specific applications of herbicides had been autho-

rized. Relying on *Idaho Conservation*, we held that "plaintiffs need not wait to challenge a specific project when their grievance is with an overall plan." *Id.* at 1355.[7] Because the EIS set guidelines that determined future herbicide applications, we concluded that the Forest Service's failure to comply with NEPA represented a concrete injury and the plaintiffs' challenge was ripe for review. *Id.* Likewise, because the Preferred Program Alternative here will determine the scope of future site-specific proposals, the defendant's alleged procedural failure to comply with NEPA's requirements is ripe for immediate judicial review.

The district court based its determination that the case is not ripe for review on *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734–35, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). In that case, a challenge to a Forest Service land resource management plan for allowing too much logging and clearcutting was deemed unripe for review because the plan could not be implemented without further site-specific environmental review. However, the *Ohio Forestry* the plaintiffs had brought a substantive challenge to the plan, rather than a procedural challenge under NEPA. The Court carefully distinguished the case at issue from a procedural challenge:

> Nor does the Plan, which through standards guides future use of the forests, resemble an environmental impact statement prepared pursuant to NEPA. That is because in this respect NEPA, unlike the NFMA, [the statute under which the

---

7. The district court distinguished *Salmon River* from the instant case because in *Salmon River* no further environmental review was required before the district foresters could exercise their discretion to spray herbicides. Thus, said the court, the EIS constituted a final agency decision unlike the EIS here where the program requires further environmental review when the program is implemented at specific sites. However, this is not

the reasoning the *Salmon River* court relied upon in its opinion. Rather, following *Idaho Conservation*, it emphasized that plaintiffs need not wait for site-specific authorization when their grievance is with the overall plan. *Id.* at 1355. Moreover, the plan in *Idaho Conservation* did require further environmental review before implementation; the *Salmon River* court did not comment on this distinction.

challenge was brought] simply guarantees a particular procedure, not a particular result. . . . Hence a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper.

*Id.* at 737, 118 S.Ct. 1665.[8]

Since *Ohio Forestry* was decided, we have recognized the distinction between substantive challenges which are not ripe until site-specific plans are formulated, and procedural challenges which are ripe for review when a programmatic EIS allegedly violates NEPA.[9] *See Kern v. BLM*, 284 F.3d 1062, 1070–71 (9th Cir.2002) (basing holding that challenge to programmatic EIS was ripe for review on substantive/procedural distinction drawn in *Ohio Forestry*, adding "[i]f there was an injury under NEPA, it occurred when the allegedly inadequate EIS was promulgated"); *see also West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 930 n. 14 (9th Cir.2000) (citing *Ohio Forestry* for proposition that failure to comply with NEPA procedures is ripe

when failure takes place); *Wilderness Soc'y v. Thomas*, 188 F.3d 1130, 1133 n. 1 (9th Cir.1999) (noting that under *Ohio Forestry* procedural challenges under NEPA are ripe when procedural failure takes place). Therefore, because Plaintiffs' challenge is a procedural one under NEPA, it is ripe for review.[10]

The Federal Defendants' reliance on *Rapid Transit Advocates, Inc. v. S. Cal. Rapid Transit Dist.*, 752 F.2d 373(9th Cir. 1985), to support their assertion that Plaintiffs' claims are unripe for review is unavailing. In that case, the court determined that a challenge to the decision of the Urban Mass Transit Administration (UMTA) to grant federal funds to a state transit agency to design and engineer a mass transit system was not ripe for review because no final agency action had taken place. Defendants argue that the administrative decision-making process in that case is analogous to the one at issue here. In *Rapid Transit*, the local transit authority had prepared a "first-tier" environmental impact statement which studied various alternatives for rapid transit and selected a preferred alternative. *Id.* at

---

8. Although the district court dismisses this distinction as mere dicta, Supreme Court dicta is not to be lightly disregarded. *See United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996) ("we treat Supreme Court dicta with due deference"); *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir.1992) ("[D]icta of the Supreme Court have a weight that is greater than ordinary judicial dicta as prophesy of what that Court might hold. We should not blandly shrug them off because they were not a holding.").

9. The Federal Defendants suggest that *Ohio Forestry* overruled *Salmon River* and *Idaho Conservation League*. They do not address the difference between the substantive challenge in *Ohio Forestry* and the procedural challenges in *Salmon River* and *Idaho Conservation League*. They instead point out that *ONRC Action v. BLM*, 150 F.3d 1132, 1136 (9th Cir.1998) notes that *Ohio Forestry* "calls into a doubt a plaintiff's ability to challenge

an agency's adoption of a plan without site-specific actions as the focus of the challenge." However, *ONRC Action* explicitly did not consider "to what extent the law of this circuit conflicts with *Ohio Forestry*" because it determined that no plan had actually been promulgated and thus there was no reviewable agency action. *Id.*

10. The Federal Defendants cite *Wyoming Outdoor Council v. United States Forest Service*, 165 F.3d 43 (D.C.Cir.1999), in which a procedural challenge to an EIS was determined to be unripe until the program had reached the site-specific stage. However, in that case the claim was based on the failure to include site-specific environmental review in the programmatic EIS. *Id.* at 45. Hence it was logical under those circumstances to postpone review until the site-specific stage. By contrast, here Plaintiffs' claim concerns the overall plan and does not allege a failure to include site-specific analysis.

376. At this point, the UMTA granted federal funds for the design and engineering of the preferred alternative. The court rejected a challenge to this decision on ripeness grounds because a decision whether to fund the construction of the project would not occur until the applicant prepared a site-specific "second-tier" EIS analyzing the effects of the chosen alternative. *Id.* Because the grant of funds for the proposed alternative did not commit the agency to approve the final design or fund construction, we determined judicial review would be premature since "the process may never be completed; the [project] may never be funded." *Id.* at 378. The Federal Defendants argue that *Rapid Transit* controls here because likewise, a site-specific EIS is required before the proposed CALFED projects may go forward, and the implementation of the project is contingent on it receiving the requisite funding.[11]

However, in *Rapid Transit* there was no tiering between the two stages of the program. Thus, funding approval at stage one did not commit the agency to design approval at stage two. *See* 752 F.2d at 376. Moreover, the agency "ha[d] explicitly disavowed any advance commitment to approve construction." *Id.* at 378. By contrast, in this case the site-specific implementation of the Preferred Program Alternative will tier from the Final Programmatic EIS at issue here. Furthermore, the ROD describes its purpose as follows:

This Record of Decision for the CALFED Bay–Delta Final Programmatic Environmental Impact Statement and Report (EIS/EIR) represents the *culmination* of the National Environmental Policy Act (NEPA) and the California Environmental Quality Act (CEQA) processes. The ROD reflects a *final selection* of a long-term plan (Preferred Program Alternative), which includes specific actions, to fix the Bay–Delta, describes a strategy for implementing the plan, and identifies complementary actions the CALFED agencies will also pursue.

(emphasis added).

Therefore, because the ROD pre-determines the future through the selection of a long-term plan (to the exclusion of others which will not be among the available options at the implementation phase), it is ripe for review. *See Res. Ltd. v. Robertson*, 35 F.3d 1300, 1303 (9th Cir.1993) (holding that NEPA challenge to timber management plan was ripe for review at programmatic stage rather than when individual sales were announced because the plan pre-determined the future); *Seattle Audubon Soc'y v. Espy*, 998 F.2d 699, 703 (9th Cir.1992) (challenge to timber management plan was ripe before specific sales were announced because individual sales would be driven by the overall plan and therefore "plaintiffs need not wait to challenge a specific project when their grievance is with the overall plan"); *Portland Audubon Soc'y v. Babbitt*, 998 F.2d 705 (9th Cir.1993) (challenge to overall timber management plan ripe because plan pre-determines the future). Accordingly, we must reverse the district court's determination that Plaintiffs' claim is not ripe for review.

## V

In addition to their claims against the Federal Defendants, Plaintiffs also challenge certain State acquisitions of land and water that were undertaken pursuant to the CALFED program. Usually, "the federal government is the only proper defendant in an action to compel compliance

---

**11.** The MOU states "It is agreed by the parties that their obligations hereunder are contingent upon the availability of appropriations from Congress for the federal agencies and the California legislature for the State agencies."

with NEPA." *Churchill County v. Babbitt,* 150 F.3d 1072, 1082(9th Cir.1998). However, [n]onfederal defendants may be enjoined if federal and state projects are sufficiently interrelated to constitute a single federal action for NEPA purposes. *"Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391 (9th Cir.1992) (quotation omitted).

Plaintiffs argue that the CALFED program in its entirety sufficiently intertwines state and federal action that the State Defendants may be enjoined from proceeding with CALFED projects until they have complied with NEPA. Because Plaintiffs do not contend that the federal government itself directly made or funded the particular challenged acquisitions, Plaintiffs' ability to bring a NEPA challenge against the State Defendants necessitates a finding that the CALFED program as whole involves sufficient federal participation that it may be characterized as a "single federal action" and thus non-federal entities acting pursuant to the program are subject to NEPA requirements.

The determination of whether federal and state projects are sufficiently intertwined to constitute a "federal action" for NEPA purposes "will generally require a careful analysis of all facts and circumstances surrounding the relationship." *Friends of the Earth, Inc. v. Coleman,* 518 F.2d 323, 329(9th Cir.1975). "There are no clear standards for defining the point at which federal participation transforms a state or local project into major federal action. The matter is simply one of degree." *Almond Hill School v. United States Dep't of Agric.,* 768 F.2d 1030, 1039 (9th Cir.1985). Here, the district court based its findings solely on its conclusion that the federal government role appeared to be advisory. Plaintiffs contest this on a number of grounds, alleging that the CALFED program as a whole constitutes a joint federal-state partnership which

serves to federalize the entire project. *See Friends of the Earth,* 518 F.2d at 327(acknowledging that state-funded projects may be "so closely interwoven with those receiving federal funds to make the entire [project] the relevant action for NEPA purposes," although the project in that case was not); *Sierra Club v. Hodel,* 544 F.2d 1036, 1043 (9th Cir.1976) (NEPA applies to entire project when federal government enters into partnership with non-federal entity). Plaintiffs highlight language in the Framework Agreement, coordination requirements, cost sharing arrangements, joint management and the requirement that the respective agencies "will develop a single blueprint for implementing the Ecosystem Restoration Program." Plaintiffs also contend that, because of the express reservation of rights contained in the relevant agreements, the CALFED Policy Group cannot force an unwilling agency to implement an approved plan. Plaintiffs also note that Proposition 204 itself states that "[t]he state shall, to the greatest extent possible, secure federal and non-federal funding to implement this article." Cal. Water Code § 78537.

Without recounting and analyzing each of these claims, it is apparent that Plaintiffs have made a sufficient showing that a fact-intensive analysis is required before a conclusion can be made as to whether the state and federal activities are so intertwined that the project qualifies as a major federal action. Because this determination cannot be made on the basis of the record before us, we remand the question to the district court.

## VI

In the district court, the State Defendants asserted for the first time in their reply brief that their land and water acquisitions were independent of the CALFED program and therefore they were not subject to an injunction under

NEPA. Although at that time Plaintiffs requested that the issue be set for discovery and briefing, the district court determined that the matter stood submitted. It then ruled that the state acquisitions were independent of federal action. Plaintiffs contend that the district court should have allowed discovery on this jurisdictional question. We agree.

A district court is vested with broad discretion to permit or deny discovery, and a decision "to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan,* 287 F.3d 1193, 1212 (9th Cir.2002). Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed. *Martel v. County of Los Angeles,* 56 F.3d 993, 995 (9th Cir.1995) (en banc). Here, the public documents offered by Plaintiffs suggest that there is at least an arguable claim that the federal government plays a significant enough role in the CALFED program to render actions taken pursuant to the program subject to NEPA requirements. Although the proffered public documents may be insufficient in themselves to establish jurisdiction, granting Plaintiffs' request to obtain through discovery a "detailed accounting of all transactions undertaken by the Defendants" would create a "reasonable probability" that the outcome of the factual motion to dismiss would be different. Therefore, Plaintiffs have established actual and substantial prejudice from being denied discovery.

Furthermore, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir.1986) (citation omitted). Although a refusal to grant

discovery to establish jurisdiction is not an abuse of discretion when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed. *See Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977) (holding that district court abused its discretion in refusing to grant discovery on jurisdictional issue); *see also Natural Res. Def. Council v. Pena,* 147 F.3d 1012, 1024 (D.C.Cir.1998) (remanding to permit "jurisdictional discovery" when allegations indicated its likely utility); *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1992) (finding abuse of discretion when district court denied jurisdictional discovery in light of allegations suggesting jurisdiction did exist). Because additional discovery would be useful to establish federal subject matter jurisdiction, and because the extent of federal involvement in the challenged transactions is contested, we reverse the district court's decision not to permit discovery.

**REVERSED AND REMANDED.**